IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAMON BELLAMY-BEY | : | |
| | : | |
| v. | : | CIVIL NO. L-04-2107 |
| | : | |
| BALTIMORE POLICE | : | |
| DEPARTMENT, et al. | : | |

## **MEMORANDUM**

This Memorandum sets forth the final discovery schedule in this case. All previous document requests, interrogatories, and requests for admissions are hereby superceded. Moreover, for the following reasons, the Court will, by separate Order, DENY Defendants's Motion to Stay (Docket No. 105) and DENY Damon Bellamy-Bey's Motion to Reconsider the Court's July 21, 2006 (Docket No. 116).

**I.     Discovery Schedule**

This case has been in discovery since January 27, 2005. On November 4, 2005, the Court held a telephone conference with the parties to determine what was delaying discovery. At that time, the parties reported that Bellamy-Bey and Sergeant Mahoney had been deposed, and Bellamy-Bey had begun the deposition of Officer Chappell. During the telephone conference, the Court set forth the remaining discovery to be completed:

(i)     Defendants were directed to provide the Court with copies of all police files relating to claims brought against Defendant police officers. Defendants later provided the documents to the Court, the Court reviewed the documents *in camera*, and the Court provided Bellamy-Bey with redacted copies of the relevant claims.

(ii)    In lieu of written discovery, Defendants were directed to provide Bellamy-Bey with a statement from each Defendant that lists:

(a)     his name;

(b)     his rank;

      (c)    his district;

      (d)    the number of years he has served and his progression within the BPD; and

      (e)    a description of his involvement with the field interview/detention of Bellamy-Bey on July 9, 2004.

The parties agreed that depositions of the Defendants would resume after Bellamy-Bey received the written submissions. It appears that Defendants have not yet provided this information;

(iii)    Defendants would contact the Baltimore Police Department (BPD) employee assigned to investigate Bellamy-Bey's claim and determine whether there are any documents pertinent to his claim, and, if so, produce those documents. It also appears that Defendants have not provided this information; and

(iv)    Bellamy-Bey would provide Defendants with Jason Woolery's contact information. It appears that this information has been provided.

Other than providing documents for in camera review and exchanging Mr. Woolery's contact information, the parties have apparently not engaged in any discovery since last November. It is unclear why discovery has ground to a halt. To set the case on track, the following deadlines will serve as the final discovery schedule. The Court will be unsympathetic to any requests for extension.

    A.    <u>Written Discovery</u>

Both Bellamy-Bey and the Defendants now state that interrogatories still need to be answered. During the November 4, 2005 telephone conference, however, both sides agreed to forego interrogatories in lieu of Defendants's written statements. Accordingly, on or before August 25, 2006, each Defendant shall provide a written and authenticated statement to Bellamy-Bey. Moreover, on or before August 25, 2006, Defendants shall provide any documents produced during the investigation of Bellamy-Bey's claim (or a statement that no

investigation was initiated). Neither party is entitled to any additional interrogatories, requests for admissions, or document production.

      B.      <u>Depositions</u>

On or before September 30, 2006, Bellamy-Bey may take the deposition of each Defendant. As agreed on November 4, 2005, each deposition will be limited to one hour. Officer Kirk Black's deposition may be conducted during his leave or by telephone. Likewise, on or before September 30, 2006, Defendants may depose Jason Woolery. This deposition will also be limited to one hour.

Bellamy-Bey may not take the deposition of the BPD's "policy witness." This case has been bifurcated, which renders BPD's policy irrelevant at this stage. Should Bellamy-Bey prevail in the first portion of the trial, he may then pursue deposition of BPD's "policy witness."

      C.      <u>Expert Discovery</u>

Both sides oppose the other's designation of experts as untimely. Defendants state that they designated their experts on April 26, 2005 and that Bellamy-Bey designated his experts on May 31, 2005. Regardless of whether the designation of experts was timely, over a year has passed since both sides designated their experts. Accordingly, both parties have had ample notice of the experts's identities. Accordingly, expert discovery shall proceed according to the following schedule:

      Expert Reports Due:      September 15, 2006

      Expert Depositions Complete:      October 16, 2006

**II.    Defendant's Motion for a Stay**

Defendants filed a Motion to Stay this case until May 1, 2007 because Defendant Black

is a member of the United States military and has been stationed in Guantanamo Bay, Cuba until March or April 2007. On July 21, 2006, the Court ordered Defendants to state what remaining discovery requires Officer Black's availability. In their July 31, 2006 status report, Defendants did not list any remaining discovery that requires Officer Black's presence. While the Court is sensitive to Officer Black's deployment, it appears that Officer Black may provide his written statement from Cuba, and, if necessary, Bellamy-Bey may take Officer Black's deposition by telephone. Accordingly, the Court will DENY Defendants's Motion to Stay.

### III.     Bellamy-Bey's Motion to Reconsider

Bellamy-Bey requested copies of all police files relating to claims brought against the Defendant police officers. The Court reviewed the files *in camera*, and found that, of the twenty-nine claims, seven are factually similar to Bellamy-Bey's allegations. Only one claim was sustained, another claim was transferred to the BPD Special Operations Division, and five of the claims were unsustained. On July 21, 2006, the Court provided Bellamy-Bey with redacted copies of the sustained claim and the transferred claim.

Bellamy-Bey now asks the Court to reconsider its decision and to provide unredacted copies of each of the seven factually similar claims. The Court has reviewed its previous Order and finds no reason disturb its ruling. Moreover, Bellamy-Bey again asks the Court to reconsider its decision to bifurcate the trial. This is the third time Bellamy-Bey has filed a motion to reconsider this issue, and the Court still sees no reason to disturb its ruling. Accordingly, the Court will DENY Bellamy-Bey's Motion to Reconsider.

### IV.     Bellamy-Bey's Travel Expenses

On July 21, 2006, this Court ordered Defendants to pay Bellamy-Bey's reasonable travel

expenses for his trip from South Carolina to Baltimore for a settlement conference. On July 31, 2006, Bellamy-Bey submitted an itemized list of expenses totaling $1,897.26. This total includes: (1) $805 for seven nights at a Holiday Inn ($115/night); (2) $35 for an oil change in preparation for the trip; (3) $294 for meals for seven days ($42/day); (4) $483.26 for milage (1,085.98 miles at .445 cents/mile);[1] and (5) $280 for "travel time" for seven days ($40/day).

The Court finds Bellamy-Bey's request offensive and unreasonable. The Court will not entertain any request for Defendants to pay for Bellamy-Bey's entire seven day trip to Baltimore,[2] an oil change, and $280 for "travel time." If he can support his request with receipts, Bellamy-Bey can only be reasonably compensated for:

    (1)    two nights at a hotel (not to exceed $115/night);

    (2)    two days of meals (not to exceed $42/day); and

    (3)    $483.26 for milage (1,085.98 miles at .445 cents/mile).

On or before August 25, 2006, Bellamy-Bey must provide his meal and lodging receipts.

## V.  Conclusion

For the foregoing reasons, the Court will, by separate Order, DENY Defendants' Motion to Stay and DENY Bellamy-Bey's Motion to Reconsider.

Dated this 2nd day of August, 2006.

                                                      _____/s/_____
                                                      Benson Everett Legg
                                                      Chief Judge

---

[1] Bellamy-Bey also states that he plans to submit a further request for reimbursement for "in-town" milage. This request is DENIED as unreasonable.

[2] Bellamy-Bey provides no explanation for why he needed to be in Baltimore for seven days when the settlement conference was only scheduled to last a few hours.

5